IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-MJ-01728-JG-1

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | ORDER ON PROBABLE CAUSE |
| ) | AND DETENTION |
| ALAA ISMAIL YASIN, ) | |
| ) | |
| Defendant. ) | |

This matter came before the court today pursuant to Fed. R. Crim. P. 5.1 to determine whether there is probable cause to support the charges contained in the criminal complaint against Defendant Alaa Ismail Yasin ("Defendant") and for a hearing on the Government's motion, pursuant to 18 U.S.C. § 3142(f), to detain Defendant until further proceedings. During the hearing, at which Defendant was represented by counsel, the court made oral findings of probable cause to support the criminal complaint. In addition, having considered the record pursuant to 18 U.S.C. § 3142(d) and based on the findings and reasons stated below and in open court, the court finds by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure the appearance of Defendant as required. The government's motion is therefore allowed.

## BACKGROUND

The Government presented the testimony of Tony Bell, an agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). Defendant was represented by counsel but not did present any testimony. Defendant is charged with knowingly making a false statement under oath in a matter relating to the registry of aliens, in violation of 18 U.S.C. § 1015(a).

Agent Bell testified that on October 2, 2013, Defendant filed an Application to Extend/Change Nonimmigrant Status (Form-I539), which Defendant signed under the penalty of perjury. The signature on the application is dated September 19, 2013. Defendant requested a change in his nonimmigrant visa status from a visitor for pleasure to foreign international student, in order to attend Wake Technical Community College. In his application, Defendant listed his address as 1116 Brucemont Drive, Garner, North Carolina 27259, and stated that he lived with his uncle, Jehad Jenajra,[1] who was responsible for supporting Defendant. Defendant further stated that Jenajra provided Defendant with a room in Jenajra's house, a car, paid for Defendant's college tuition, and was responsible for all other expenses. Defendant's first application for change in nonimmigrant status was denied due to failure to provide proof of sufficient funds. On March 11, 2014, Defendant filed a notice of appeal to reopen and reconsider his change in nonimmigrant status application. In his second application, Defendant provided additional information regarding his source of financial support, Bonnie Cathy Byrd Knowles, and, once again, listed his address as 1116 Brucemont Drive, Garner, North Carolina 27529. On July 10, 2014, Defendant's appeal was granted, and, on September 2, 2014, Defendant's application for change of nonimmigrant status was granted.

On March 29, 2015, Agent Bell conducted an interview with Defendant at 1503 Harth Drive, Apartment B, Garner, North Carolina. Defendant admitted that he lived at the Harth Drive apartment, not at his uncle's home. Further, Defendant admitted he had lived at the apartment for over one year. When questioned about how he afforded the apartment, Defendant told Agent Bell

---

[1] Agent Bell's affidavit in support of the criminal complaint spelled Defendant's uncle's name as "Jenajra"; however, the pretrial services report spelled his name as "Janajra."

that he shared the space with two roommates and received money from his father in Palestine. Additionally, Defendant told Agent Bell that he had occasionally helped out at his uncle's pizza restaurant, but that he was not paid.

Agent Bell contacted the landlord for the Harth Drive apartment, and the landlord informed Agent Bell that Defendant had been on the lease for the apartment since July 2013. The lease was signed by both Defendant and Jenajra. On June 30, 2015, HSI and Federal Bureau of Investigation ("FBI") agents located Defendant at his uncle's pizza restaurant. Defendant was arrested for working in violation of his nonimmigrant status. Upon arrest, Defendant was informed of his rights pursuant to *Miranda*, and Defendant agreed to speak with Agent Bell. Defendant verified his signature on the application and admitted that he only put the Brucemont Drive address on his application at his uncle's direction. According to Agent Bell, Defendant also stated that he was working at his uncle's restaurant, but he was not being paid. Agent Bell testified that Defendant's nonimmigrant status did not allow any type of work, regardless of pay. Agent Bell also questioned Defendant about his communication with a person known to be involved with a terrorist organization. Defendant originally denied these alleged communications. However, in an interview with FBI agents in April 2015, Defendant admitted to communicating with someone known to be involved with a terrorist organization.

Through the testimony of Agent Bell, the Government has presented credible evidence sufficient to demonstrate that it is more likely than not that the charged offense has been committed by Defendant. Accordingly, based on this evidence, and for the other reasons stated in open court, there is probable cause to believe Defendant committed the offense charged in the criminal complaint.

## DISCUSSION

The court conducted a detention hearing in accordance with the Bail Reform Act, 18 U.S.C. § 3142. The law requires that Defendant be detained pending further proceedings based on the following principal findings and reasons: (1) the nature of the charges; (2) the lack of a third-party custodian; (3) risk of non-appearance due to Defendant's current immigration status; and (4) other findings and reasons stated in open court. Considerations cited by Defendant's counsel at the hearing, including Defendant's cooperation during the investigation and the proximity between Defendant's apartment and his uncle's business and residence, do not offset the factors weighing heavily in favor of detention.

## CONCLUSION

Accordingly, Defendant is committed to the custody of the Attorney General or a designated representative for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. Defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Defendant to the United States Marshal for a court appearance.

So ordered, the 8 day of July 2015.

Robert B. Jones, Jr.
United States Magistrate Judge

4